USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 01/07/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
COOPER UNION FEDERATION OF COLLEGE
TEACHERS, LOCAL 2163, NYSUT, AFT, AFL-
CIO by its President DAY GLEESON,

       Petitioner-Plaintiff,

 -against-

THE COOPER UNION FOR THE
ADVANCEMENT OF SCIENCE AND ART,

       Respondent-Defendant.
------------------------------------------------------------ x

No. 18-CV-05891(VEC)

**OPINION AND ORDER**

Valerie Caproni, United States District Judge:

  This case concerns Cooper Union's decision to reduce the number of class hours for certain courses offered by the School of Engineering, allegedly in violation of the school's internal governance rules for curriculum revision. Plaintiff, the labor union representing Cooper Union's faculty, filed suit to vacate the school's decision in state court. Cooper Union then removed the case to this Court pursuant to Section 301 of the Labor Management Relations Act (LMRA), which establishes federal jurisdiction over any state law claim that substantially depends on an interpretation of a collective bargaining agreement (CBA). Plaintiff asserts that the school's governance rules are separate and independent from the parties' CBA and moves to remand the case to state court. Because Cooper Union's authority to modify the number of class hours cannot be determined without a substantial analysis of ambiguous language in the CBA, the Court concludes that jurisdiction is proper under the LMRA and, therefore, denies the motion to remand.

**I. Background**

Cooper Union for the Advancement of Science and Art (Cooper Union) is a private university located in New York. Complaint (Dkt. 4-2) ¶¶ 2–3. Cooper Union consists of various schools, including, most relevant here, the School of Engineering. *Id.* ¶ 3. Cooper Union Federation of College Teachers (CUFCT) is a labor union that represents all full-time faculty members employed by Cooper Union. *Id.* ¶ 2.

Cooper Union and CUFCT are parties to a collective bargaining agreement. CBA (Dkt. 4-5) at 56.[1] The agreement contains forty-one articles that govern, among other things, compensation, promotion, benefits, setting of the academic calendar, and grievance procedures.

Article Eight of the CBA, titled "Governance," establishes the relationship between the CBA, which applies to the entire university, and school-specific faculty governances. CBA at 23. The faculty governances appear to be sets of administrative rules adopted by the faculty of each school, including the School of Engineering, and Cooper Union's Board of Trustees. Complaint ¶¶ 8–10. The CBA indicates that a faculty governance, "as it exists or may exist in the future, is separate and distinct from, and independent of, the terms of [the] Agreement." CBA at 23 (Article Eight). A faculty governance may therefore predate or survive the CBA. *Id.* The CBA also provides, however, that all governances "shall be applied in a manner which is consistent with the terms of [the] Agreement." *Id.*

Article V, Section 4 of the governance for the School of Engineering sets forth a detailed process for revising the curriculum. Governance (Dkt. 4-2, Ex. A) at 5–6. It provides for the creation of a Curriculum Committee, which consists of one representative from each of the seven

---

[1] Dkt. 4-5, which contains the CBA text, is a compilation of the original agreement as well as later amendments, in reverse chronological order. For simplicity, this opinion cites to the ECF page numbers in Dkt. 4-5, not the original page numbers of the various sub-components.

2

departments in the School of Engineering. *Id.* To initiate the revision process, except for certain minor changes, the Committee must prepare a proposal and forward it to the school faculty for a vote at the next faculty meeting. *Id.* If approved by the faculty, the proposal is then sent to the President of Cooper Union with a schedule for the introduction of the revised curriculum. *Id.* The President may then approve the proposal and notify the Dean. *Id.* If a proposal is rejected by the faculty or the President, it is returned to the Committee for further evaluation. *Id.*

On January 30, 2018, Dean Richard Stock of the Engineering School sent separate emails to the Math, Chemistry, and Physics Departments, notifying the faculty of his decision to reduce the number of instructional hours (referred to by the parties as "course contact hours") for certain courses. Dkt. 4-2, Ex. B. Specifically, the Dean noted that some courses meet for more hours per week than the number of credits that students receive for completing those courses, *i.e.*, a three-credit General Chemistry course had four hours of class-time per week. *Id.* The Dean decided that the number of class hours per week must be reduced to match the number of credits assigned to each course. *Id.* In those same emails, the Dean directed the faculty to revise course syllabi and curricula, so that the course material could be taught within the new time constraints. *Id.* ("Please review and revise the course syllabi and curriculae to be able to work with these constraints."). The Dean described the nature of those changes as "operational" and did not follow the Committee process detailed in the Engineering School's governance. *See id.*

On May 30, 2018, CUFCT, on behalf of the faculty, commenced an Article 78[2] proceeding against Cooper Union in New York Supreme Court, arguing that the Dean's decision violated the governance and should be vacated. Complaint ¶ 1; N.Y. C.P.L.R. § 7801, *et seq.*

---

[2] An Article 78 proceeding is a special mechanism under New York law that may be invoked, *inter alia*, to compel schools and universities to comply with their own rules and procedures. *See Powers v. St. John's Univ. Sch. of Law*, 32 N.E.3d 371, 375–76 (N.Y. 2015) ("A determination will not be disturbed unless a school acts arbitrarily and not in the exercise of its honest discretion, it fails to abide by its own rules."); *Monaco v. New York Univ.*, 145

3

Invoking Section 301(a) of the LMRA (29 U.S.C. § 185(a)), Cooper Union removed the case to this Court. Dkt. 4 at 1. Cooper Union argues that this Court has jurisdiction because the LMRA completely preempts CUFCT's state law claim. *Id.* at 4. CUFCT now moves to remand the case to state court. Dkt. 13.

**II.     Discussion**

    **A.  Legal Standard**

"[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Because Cooper Union removed this case from state court, it has the burden to establish that removal is proper. *Id.*

For removal of an action to be proper, the action must be one that "could have been originally filed in federal court." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997); *Wilds v. In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014). In this case, because Cooper Union has not demonstrated a basis for diversity jurisdiction, removal can only be proper if there is a federal question.

Ordinarily, a federal preemption defense does not give rise to a federal question, but the LMRA's preemptive force is "so extraordinary" that it converts any preempted state law claim into a federal claim removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citation omitted) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim,

---

A.D.3d 567, 568 (1st Dep't 2016) ("A university's academic and administrative decisions require professional judgment and may only be reviewed by way of a CPLR article 78 proceeding to ensure that such decisions are not violative of the institution's own rules and neither arbitrary nor irrational."); *Gertler v. Goodgold*, 107 A.D.2d 481, 486, *aff'd*, 489 N.E.2d 748 (N.Y. 1985) ("[Private colleges and universities are accountable in a CPLR Article 78 proceeding . . . for the proper discharge of their self-imposed as well as statutory obligations.").

4

and therefore arises under federal law."); *Vera v. Saks & Co.*, 335 F.3d 109, 113–14 (2d Cir. 2003); *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001).

A state law claim is completely preempted by Section 301(a) of the LMRA if resolution of the claim requires "substantial" interpretation or analysis of the CBA.[3] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994) ("[W]here the resolution of a state-law claim depends on an interpretation of the CBA, the claim is pre-empted."); *Caterpillar Inc.*, 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." (citation omitted)); *Vera*, 335 F.3d at 115–16; *Wynn*, 273 F.3d at 158. The emphasis on "substantial interpretation" as a preemption criterion stems from the need for a uniform body of federal law to govern the interpretation and enforcement of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403, 405–06 (1988) ("If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of [potentially inconsistent] state law . . . is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.").

In contrast, the need merely to "consult" or "refer" to the CBA does not trigger preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233–34 (2d Cir. 1997) (same). Whenever a party invokes preemption under the LMRA, the CBA will almost

---

[3] Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).

5

certainly have to be consulted to determine whether the agreement is even relevant to the state claim. A cursory review of a CBA to determine its apparent scope cannot be grounds for preemption, as that could preempt virtually every claim involving parties to a CBA. *See Foy*, 127 F.3d at 233–35 ("[T]he review of the CBA needed to decide preemption in this case is not in itself 'interpretation' warranting preemption; if it were, the preemption doctrine under § 301 would swallow the rule that employees can assert . . . rights that are independent of their collective bargaining agreements.").

While the line between "substantial interpretation" and mere consultation may be "elusive," choosing between plausible readings of ambiguous and material terms clearly falls within the realm of interpretation. *See Vera*, 335 F.3d at 115–16 ("[P]laintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA."); *Coakley v. Kingsbrook Jewish Med. Ctr.*, No. 16-CV-7009, 2017 WL 398379, at *2 (E.D.N.Y. Jan. 30, 2017) ("A claim is preempted under § 301 if . . . the CBA provision relevant to the plaintiff's claim is ambiguous." (citing *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006))). In other words, if the relevant provisions of the CBA are ambiguous, such that the success of the state claim turns on how that ambiguity is resolved, then the claim is preempted by the LMRA. *See Coakley*, 2017 WL 398379, at *2; *cf. Livadas*, 512 U.S. at 125 ("[W]hen liability is governed by independent state law, the mere need to look to 'the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301.'" (quoting *Lingle*, 486 U.S. at 413)).

In sum, CUFCT's motion to remand must be denied if a violation *vel non* of the Engineering School's governance can only be determined after a substantial analysis of the CBA.

### B. Application

CUFCT's claim is substantially dependent on an analysis of the CBA. Because the CBA expressly supersedes any conflicting governances, any attempt to enforce a school governance will require the CBA to be consulted to some degree. *See* CBA at 23 (Article Eight). The dispositive question is whether the required reference to the CBA in this case would rise to the level of a "substantial" analysis sufficient to preempt the state claim and confer jurisdiction on this Court under the LMRA. *Vera*, 335 F.3d at 115–16. As explained below, the Court concludes that the scope of Cooper Union's authority under the CBA to reduce classroom time is ambiguous, and at least one plausible interpretation of the CBA would be fatal to CUFCT's claim. CUFCT's state law claim therefore depends "substantially" on how the CBA's ambiguity is resolved and is completely preempted. As a result, this Court has jurisdiction over the action under the LMRA and must deny the motion to remand.

The starting point of this Court's analysis is Article Eight of the CBA, which defines the relationship between the CBA and faculty governances. Pursuant to Article Eight, all faculty governances shall exist "separate[ly]" and "independent[ly]" from the CBA. CBA at 23. At the same time, the CBA reins in the permissible scope of such governances by requiring every governance to be "consistent with the terms" of the CBA.[4] *Id.* How a relationship can be simultaneously independent *and* subordinate is somewhat curious, but the Court must strive to give effect to all terms in the CBA, even if they appear to be inconsistent. *See Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 131–32 (2d Cir. 2005) ("[W]e must [] seek to avoid rendering any of the CBA language superfluous."). The clear meaning that the Court discerns

---

[4] Because the governance is clearly subordinate to the CBA, CUFCT's argument that the CBA need not be even consulted, let alone interpreted, is meritless. *See* CUFCT Mem. (Dkt. 14) at 7.

7

from Article Eight is this: while governances may predate and survive the CBA and therefore do not derive their force from the collective bargaining process as a general matter, no governance can circumvent the compromises negotiated for and memorialized in the CBA. *See* CBA at 23. In other words, the CBA treats the governance mechanism as a means of filling in the gaps left unresolved by the CBA. *See* CBA at 23 (Article Eight) (delegating faculty appointment, reappointment, promotion, and tenure disputes to governance processes and exempting any disputes thereof from CBA's grievance and arbitration process).

The problem for CUFCT, however, is that the CBA has another residual provision that reserves customary "management rights" for the school, which may conflict with the gap-filling function of faculty governances. CBA at 50 (Article Thirty). Article Thirty specifies that:

> The Cooper Union retains its rights to exercise the ordinary and customary rights of management, such as hiring, directing and scheduling Faculty and Librarian work; planning, directing, and controlling operations; utilizing facilities; modifying, discontinuing, eliminating, instituting, reorganizing or combining programs or other operations; promulgating reasonable rules and regulations; and introducing any new or improved technique, method, or facility.

*Id.* It is not apparent from the face of Article Thirty that Cooper Union does not retain an "ordinary and customary" right to decide that instructional hours should match course credits.[5] *See id.* The Article provides a non-exclusive list of examples, and it is not clear that adjusting the amount of class time to match course credits is entirely dissimilar from "directing and scheduling Faculty . . . work," "modifying" and "reorganizing" "programs or other operations," "promulgating reasonable rules," and "introducing any new . . . method." *Id.*; *see Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 210 (2d Cir. 2016) (interpreting contractual term "by the

---

[5] To clarify, the Court does *not* conclude that Cooper Union actually has the unilateral authority under the CBA to modify course hours. Rather, that is only one plausible outcome that cannot be rejected without a substantial analysis of the meaning of the phrase, "ordinary and customary rights."

8

company it keeps"). Thus, a state court adjudicating CUFCT's Article 78 claim would not only have to refer to the CBA but would also have to consider the parties' bargaining history and past practice and the language and context of the CBA to determine whether Article Thirty grants Cooper Union the authority to modify course hours—an exercise that amounts to a "substantial" analysis or interpretation of the CBA.[6] *See Marcic*, 397 F.3d at 131–32 (holding that courts may look to "bargaining history, past practices, [] other CBA provisions" and "general practice of the industry" to resolve ambiguities).

The scope of Cooper Union's customary management authority is central to determining whether it has violated the Engineering School's faculty governance.[7] If the CBA authorizes Cooper Union to adjust course hours to match course credits, any governance to the contrary would be superseded as inconsistent with the terms of the CBA. *See* CBA at 23 (Article Eight). On the other hand, if the CBA does not reserve such power for Cooper Union, then the governance remains in full force, and a state court conducting a hypothetical Article 78 proceeding could vacate Cooper Union's decision as violative of its own rules. *See Powers v. St. John's Univ. Sch. of Law*, 32 N.E.3d at 375–76. Cooper Union's liability under state law therefore depends on how the CBA's ambiguity is resolved. *Cf. Livadas*, 512 U.S. at 125.

CUFCT's attempt to characterize the dispute as concerning curriculum revision, rather than changes in instructional hours, is disingenuous. *See* CUFCT Mem. (Dkt. 14) at 9 (distinguishing Cooper Union's "improper directive to revise course curriculum" from its

---

[6] Cooper Union also argues that the governance is inconsistent with Articles Eleven and Thirty-Five of the CBA. Cooper Union Mem. (Dkt. 16) at 5–6. Because Articles Eight and Thirty fully resolve this motion, the Court declines to address any potential conflict with other CBA provisions.

[7] While it was the Dean of the Engineering School rather than the President of Cooper Union who made the decision at issue, that fact makes no difference to our analysis. For all intents and purposes, Cooper Union appears to have adopted the Dean's decision, and the CUFCT is attempting to hold Cooper Union responsible, not the Dean of the Engineering School. *See* Complaint ¶ 1.

9

"change in course contact hours"). While the Court might otherwise be sympathetic to the argument that the CBA, including Article Thirty, is silent as to curriculum revision and therefore does not conflict with or preempt the governance on such matters, CUFCT's complaint makes clear that this case is, in fact, about so-called "course contact hours." Complaint ¶ 1 ("Petitioner seeks, *inter alia*, an order vacating the decision by [Cooper Union] to unilaterally change course contact hours for courses within [the School of Engineering]."). The specific relief that CUFCT seeks is the vacatur of the Cooper Union's decision to reduce course hours, not the Dean's direction to the faculty to fit each course's content within those reduced hours. *Id.* Indeed, it would be quite bizarre if the faculty were interested in a pyrrhic victory that allows professors to teach truncated classes with old syllabi, thereby implicitly lopping off the last quarter or so of the subject matter. Because a state court cannot grant the type of relief that CUFCT seeks without first defining the scope of Cooper Union's customary management authority, CUFCT's claim is one that depends on substantial analysis of the CBA and is preempted by the LMRA.

CUFCT also argues that its claim should not be preempted, because Article 78 proceedings are unique creations of state law. While federal courts should always be cautious when holding that actions under state law are preempted, nothing in the LMRA jurisprudence allows for prioritization of various types of state claims based on the strength of the state's policy interest. Indeed, giving special treatment to certain types of state actions would undermine the very purpose of LMRA preemption, which is to eradicate vagaries of state law as they relate to CBAs. *See Lingle*, 486 U.S. at 405–06. Unsurprisingly, the cases that CUFCT cites in favor of special treatment are not LMRA cases at all and therefore say nothing about the preemptive force of Section 301. *See, e.g.*, *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006) (equal protection and supplemental jurisdiction);

10

*Beckwith v. Erie County Water Auth.*, 413 F. Supp. 2d 214, 226 (W.D.N.Y. 2006) (First Amendment retaliation and supplemental jurisdiction); *Blatch ex. rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 600 (S.D.N.Y. 2005) (class action involving Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act and supplemental jurisdiction); *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) (employment discrimination and supplemental jurisdiction).

In sum, the Court concludes that determining whether Cooper Union violated the Engineering School's governance requires ascertaining the scope of the university's authority under Article Thirty of the CBA, which is ambiguous. And because Cooper Union's liability under state law hinges on how the CBA's ambiguity is resolved, CUFCT's claim depends on a substantial analysis of the CBA and is preempted under Section 301(a) of the LMRA (29 U.S.C. § 185(a)). This Court therefore has subject matter jurisdiction over this action, and CUFCT's motion to remand is denied.

## III. Conclusion

For the foregoing reasons, CUFCT's motion to remand this case to state court is DENIED. The parties are directed to submit a joint letter, no later than **January 25, 2019**, explaining why this case should not be dismissed because CUFCT's only claim has been completely preempted by federal law.

The Clerk of Court is respectfully directed to terminate docket entry 13.

**SO ORDERED.**

**Dated: January 7, 2019**
      **New York, NY**

                                                  **VALERIE CAPRONI**
                                                  **United States District Judge**